1
2
3
4
5
6
7
8
9
10
11
12

Natalie M. Cuadros (CA 326368)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:628.600.2250
NCuadros@beneschlaw.com

David M. Krueger (OH 0085072) (Pro Hac Vice Pending)
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:   216.363.4588
DKrueger@beneschlaw.com
JDagon@beneschlaw.com

Attorneys for Defendant
Bankroll Capital, Inc.

# IN THE UNITED STATE DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| MICHAEL SCOFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANKROLL CAPITAL, INC., a California corporation, and AMERICAN BUSINESS SERVICES INC., a Colorado corporation,<br><br>Defendants. | Case No. 8:22-cv-01515<br><br>[First Amended Complaint Filed: December 14, 2022]<br><br>**NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OF DEFENDANT BANKROLL CAPITAL, INC.; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  February 3, 2023<br>Time:  9:00 a.m.<br><br>Trial Date: Not set<br><br>Judge: Hon. John W. Holcomb<br><br>[Filed concurrent with Memorandum of Points and Authorities; [Proposed] Judgment] |

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**Case No. 8:22-cv-01515**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on February 3, 2023 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 9D of the above captioned Court located at 411 W. 4th Street, Santa Ana, California 92701, Defendant Bankroll Capital, Inc. ("**Bankroll**"), will move the Court for dismiss Count II and Count III of Plaintiff's First Amended Complaint alleging violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("**FTSA**"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's First Amended Complaint fails to state a claim for relief for alleged violations of the FTSA. Specifically, even assuming the truth of Plaintiff's factual allegations, Plaintiff does not plausibly allege that the text messages at issue constitute "telephonic sales calls" under the FTSA, as is necessary to establish a claim for both Count II and Count III. Accordingly, Bankroll moves the Court for an Order dismissing Count II and Count III of Plaintiff's First Amended Complaint with prejudice, as Bankroll is entitled to judgment on these claims as a matter of law.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 16, 2022.

The motion is based on this notice, the attached memorandum of points and authorities filed concurrently herewith, and all papers and pleadings on file in this action, along with any oral argument that the Court may entertain in connection with this motion.

Dated:  December 22, 2022

Respectfully submitted,

s/ Natalie M. Cuadros
Natalie M. Cuadros (CA 326368)
David M. Krueger (Pro Hac Vice Pending)
Benesch, Friedlander, Coplan &
 Aronoff LLP

Attorneys for Defendant
Bankroll Capital, Inc.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        In June of 2022, Bankroll sent Plaintiff three text messages offering a business line

4   of credit for his business. As Plaintiff's telephone number is on the national do-not-call

5   registry ("**DNC Registry**"), Plaintiff filed this putative class action against Bankroll,

6   alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**")

7   and Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("**FTSA**"). (*See* First Am.

8   Compl., Dkt. 22, "**FAC**.")

9        Plaintiff's FTSA claims fail as a matter of law. The FTSA only governs "telephonic

10  sales calls." To constitute a telephonic sales call, a text message must attempt to sell, or

11  extend credit for, consumer goods or services. Plaintiff does not allege that Bankroll offers,

12  or attempted to extend credit for, any consumer goods or services. Rather, Plaintiff

13  correctly alleges that Bankroll only offers its products and services (lines of credit or loans)

14  to businesses, not consumers. As such, Bankroll's text messages to Plaintiff do not qualify

15  as "telephonic sales calls" and are not actionable under the FTSA.

16

## II.   RELEVANT FACTS

17       Plaintiff is a resident of Florida and alleges his cellular telephone number has been

18  on the DNC Registry since 2007. (FAC ¶¶ 1, 32-33.) Bankroll is a California corporation

19  that offers "business loans and lines of credit." (FAC ¶¶ 2, 14.)

20       Plaintiff alleges that Bankroll sent three text messages to his cellular telephone:

21       • June 8, 2022: "Hi Michael. Kate again checking back on your business

22         profile. FYI checking options wont [sic] affect your score, no SSN

23         required. Call if you have questions." (FAC ¶ 34.)

24       • June 15, 2022: "Hi Michael. Im [sic] just checking in for this month.

25         Dragonfly Aerials may still qualify for a cred[it] line up to 247k. May

26         I email the current guidelines?" (FAC ¶ 37.)

27       • June 16, 2022: "Hi Michael. Kate again following up before we close

28

your file. Please complete your business profile so I can send options.

Give me a call to discuss." (FAC ¶ 39.)

Plaintiff alleges that these messages sought "information about Plaintiff's business" to make a lending offer. (FAC ¶¶ 34, 37, 39.) Plaintiff objects to these messages, alleging that he "did not request business loan quotes" from Bankroll. (FAC ¶ 41.)

Plaintiff also alleges various other information about Bankroll, ranging from employee LinkedIn profiles, job advertisements, purported Better Business Bureau complaints, and purported "youmail" transcriptions of various Bankroll voicemails left for other people besides Plaintiff. As detailed further below, these allegations likewise repeat that Bankroll offers loans for "business owners," provides "business funding" to "small business owners," provides "ways for small businesses to obtain loans," and similar repetitions of that same theme. (FAC ¶¶ 16-17, 30.)

### III.   LAW & ARGUMENT

#### A. STANDARD FOR RULE 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (citation and internal quotation omitted). Plaintiff must assert cognizable factual allegations that are "plausible" in light of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 681. Courts should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

#### B. THE FLORIDA TELEPHONE SOLICITATION ACT

The FTSA governs telephonic sales calls made to Florida residents. Fla. Stat. § 501.059. Plaintiff alleges that Bankroll violated the FTSA in two ways. First, Plaintiff

1  alleges Bankroll violated the FTSA by calling his telephone number because it was on the

2  National DNC Registry. (FAC, Count II, ¶¶ 57-62.) The FTSA prohibits a "telephone

3  solicitor" from making "any unsolicited telephonic sales call to any residential, mobile, or

4  telephonic paging device telephone number if the number for that telephone appears in the

5  then-current quarterly listing published by the department." Fla. Stat. § 501.059(4).

6       Second, Plaintiff alleges that Bankroll violated the FTSA because the Bankroll

7  representative did not identify herself by her full name and identify Bankroll in the text

8  message. (FAC, Count III, ¶¶ 63-68.) The FTSA requires that a "telephone solicitor who

9  makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging

10  device telephone number shall identify himself or herself by his or her true first and last

11  names and the business on whose behalf he or she is soliciting immediately upon making

12  contact by telephone with the person who is the object of the telephone solicitation." Fla.

13  Stat. § 501.059(2).

14       To state claim under either provision of the FTSA, Plaintiff must plausibly allege a

15  "telephonic sales call." But the definition of a telephonic sales call does not extend to any

16  type of call promoting or offering a company's goods or services. Instead, a telephonic

17  sales call is specifically defined as

18       a telephone call, text message, or voicemail transmission to a consumer for
19       the purpose of soliciting a sale of any *consumer goods or services*, soliciting
        an extension of credit for *consumer goods or services*, or obtaining
20       information that will or may be used for the direct solicitation of a sale of
        *consumer goods or services* or an extension of credit for such purposes.
21

22  Fla. Stat. § 501.059(1)(j) (emphasis added).

23       Thus, to constitute a telephonic sales call, a call must seek to sell, or extend credit

24  for, "consumer goods or services." The FTSA also specifically defines "consumer goods

25  or services" as:

26       real property or tangible or intangible personal property that is *normally used*
27       *for personal, family, or household purposes*, including, but not limited to,
        any such property intended to be attached to or installed in any real property

28

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**Case No. 8:22-cv-01515**

without regard to whether it is so attached or installed, as well as cemetery lots and timeshare estates, and any services related to such property.

Fla. Stat. § 501.059(1)(c) (emphasis added).

## C. BANKROLL'S TEXT MESSAGES TO PLAINTIFF WERE NOT "TELEPHONIC SALES CALLS" UNDER THE FTSA

Simply put, the text messages at issue do not constitute telephonic sales calls under the FTSA because they were not seeking to sell, or extend credit for, consumer goods or services. Plaintiff alleges that Bankroll is a business that specifically offers "business loans." (FAC ⁋ 14.)

Plaintiff alleges—and correctly so—that the text messages at issue "sought information about Plaintiff's business" for the purpose of providing "business loan quotes." (FAC ⁋⁋ 34, 37, 39, 41.) Plaintiff does not allege that Bankroll ever offered to provide a loan or extend credit for consumer purposes, that is, a loan or line of credit for "personal, family, or household purposes." Fla. Stat. § 501.059(1)(c).

Even stepping back from the specific text messages Plaintiff received, his broader allegations as to Bankroll's entire business are the same. For example, Plaintiff includes a LinkedIn profile for a Bankroll employee and job advertisement, both of which note that Bankroll offers loans for "business owners," provides "business funding" to "small business owners," and offers "ways for small businesses to obtain loans." (FAC ⁋⁋ 16-17.)

Plaintiff also includes a host of supposed online complaints about Bankroll and purported transcripts of Bankroll voicemails. (FAC ⁋ 30.) Yet, none allege that Bankroll offers any consumer goods or services, but rather note that Bankroll offers "business loans," "business line[s] of credit," "small business funding," "funding for your business," and various iterations of this same premise. (*Id.*)

Plaintiff does not simply fail to allege that the text messages were soliciting an extension of credit for consumer goods or services. His factual allegations affirmatively demonstrate that Bankroll's text messages were ***not*** for consumer purposes, but rather were

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**Case No. 8:22-cv-01515**

1    squarely for business purposes, which fall outside the scope of the FTSA.[1]

2         To Bankroll's knowledge, there is a dearth of case law examining this specific issue

3    under the FTSA. This is because while the FTSA was enacted in 1987, it did not provide

4    for a private cause of action until July 1, 2021. *See* 2021 Fla. SB 1120 (amending FTSA).

5    However, cases involving similar Florida statutory schemes are replete, on point, and

6    instructive here.

7         For example, the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et*

8    *seq.* ("**FCCPA**"), regulates attempts collect consumer debts, which are similarly defined

9    as debts incurred with a transaction "for personal, family, or household purposes." Fla.

10   Stat. § 559.55(6). Florida courts uniformly find that business loans and lines of credit are

11   not consumer debts subject to the FCCPA. *See, e.g.*, *Korkmas v. Onyx Creative Grp.*, 298

12   So. 3d 690, 692-93 (Fla. DCA 1st 2020) (holding that attempts to collect a business loan

13   are not subject to the FCCPA, even if the plaintiff used the funds for personal purposes);

14   *Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 893-94 (11th Cir.

15   2006) ("The statute does not apply to the loan obtained by Lingo, which was a loan for a

16   business, not for 'personal, family, or household purposes.'"); *Matos v. Bus. Law Grp.*, No.

17   6:18-cv-1105, 2022 U.S. Dist. LEXIS 81905, *3-7 (M.D. Fla. May 5, 2022) (holding that

18   attempts to collect debt on investment properties is not a consumer debt and outside the

19   scope of the FCCPA); *Thompson v. Branch Banking & Trust Co.*, No. 19-CV-60108, 2020

20   U.S. Dist. LEXIS 78198, *26-27 (S.D. Fla. May 1, 2020) ("[T]he debt at issue undisputedly

21   pertains to a business loan … [and] does not constitute a debt as defined by the FCCPA.");

22   *Pelletier v. Estes Groves, Inc.*, No. 16-CV-14499, 2018 U.S. Dist. LEXIS 236399, *27-29

23   (S.D. Fla. March 28, 2018) ("The statute does not apply to a loan for a business.").[2]

24

25   [1] Plaintiff offers several conclusory allegations that the messages constituted a "telephonic
     sales call." (*E.g.*, FAC ¶¶ 61-62.) Such legal conclusions and characterizations are not
26   entitled to any deference in deciding a motion to dismiss. *E.g.*, *Twombly*, 550 U.S. at 555.

27   [2] Many of these decisions also involve the federal Fair Debt Collection Practices Act, which
     is substantively identical to the FCCPA on this issue. *See* 15 U.S.C. § 1692a(5).
28

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**Case No. 8:22-cv-01515**

Florida courts also uniformly reach the same conclusion regarding other statutory schemes that are limited to consumer transactions. *See, e.g.*, *B&B Capital Group 26 Llc v. Ctg Holding Group Llc*, Dade County No. 2021-018519, 2022 Fla. Cir. LEXIS 1169, *8 (Fla. 11th Jud. Cir. March 7, 2022) ("Multiple courts have considered and rejected similar allegations and arguments made by individuals attempting to bring TILA claims when it was undisputed that the subject loan was made to a business."); *Peters v. Ojeda*, 902 So. 2d 219, 220 n.1 (Fla. DCA 3d 2005) (holding that "business loans are exempt" from the Florida Fair Lending Act, which are limited to "personal, family, or household loans"); *Beasley Broadcasting v. Department of State*, 693 So. 2d 668 (Fla. DCA 2d 1997) (holding that selling radio advertising to a business it not offering a consumer product or service subject to Florida's consumer game promotion laws); *Kit Car World, Inc. v. Skolnick*, 616 So. 2d 1051, 1053-54 (Fla. DCA 5th 1993) (finding that the creditor had a superior interest to an intermediate buyer of debtor's assets, as the business debt and collateral was not for "personal, family, or household purposes" under the Florida Uniform Commercial Code); *Evans v. Arcade Management Corp.*, 519 So. 2d 1101 (Fla. DCA 3d 1988) (holding that the plaintiffs' purchase of arcade units for use in commercial retail location was not a sale of "consumer goods or services" subject to the Florida Home Solicitation Sales Act).

Other Florida statutory schemes offer further support of the FTSA's limited scope. For example, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (**FDUTPA**), when enacted, was limited to "consumer transactions" for personal, family, or household purposes. *See Beacon Prop. Mgmt. v. PNR, Inc.*, 890 So. 2d 274, 277 (Fla. DCA 4th 2004) (discussing legislative history of the FDUTPA); *see also Kingswharf, Ltd. v. Kranz*, 545 So. 2d 276, 278 (Fla. DCA 3d. 1989) ("[W]e cannot ignore the statutory definitions and stated purposes of the Act which appear to limit its application to consumer transactions … that are primarily personal, family, or household."). But the Florida General Assembly later amended the FDUTPA, removed the definition of a consumer transaction, and broadened the scope to encompass transactions between businesses. *Beacon Prop.*

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**Case No. 8:22-cv-01515**

1   *Mgmt.*, 890 So. 2d at 277-78 ("[T]he 1993 amendments to FDUTPA made clear that the

2   statute is not limited to purely consumer transactions. It is now intended by its plain text to

3   apply … between purely commercial interests.").

4          If the Florida General Assembly wanted to include soliciting a sale of goods and

5   services, or extending credit, for business purposes within the FTSA's definition of a

6   "telephonic sales call," it knew exactly how to do it. It did not. Instead, it limited the

7   definition to calls offering or extending credit for "consumer goods or services," that are

8   "for personal, family, or household purposes," consistent with statutory schemes like the

9   FCCPA. Fla. Stat. § 501.059(1)(c), (j); *see, e.g.*, *Knowles v. Beverly Enterprises-Florida,*

10  *Inc.*, 898 So. 2d 1, 6 (Fla. 2004) ("[C]ourts must give full effect to all statutory provisions

11  and construe related statutory provisions in harmony with one another."). Where, like here,

12  "the language of the statute is clear and unambiguous …. the statute must be given its plain

13  and obvious meaning." *Id.* at 5. A "telephonic sales call" only covers the extension of credit

14  for consumer goods or services, not business purposes.

15         Thus, "[i]t is apparent from a review of the [FAC] that" Bankroll's offer to Plaintiff

16  for a loan "was a commercial one, not one for personal, family or household purposes."

17  *Dude v. Cong. Plaza LLC*, No. 17-CV-80522, 2020 U.S. Dist. LEXIS 79575, *6-7 (S.D.

18  Fla. May 6, 2020) (granting motion to dismiss FCCPA claim). As such, the text messages

19  do not qualify as a "telephonic sales call" under the FTSA, and Plaintiff's Count II and

20  Count III of the First Amended Complaint fail as a matter of law. [3]

21         //

22         //

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24  [3] For the sake of completeness, because Plaintiff does not adequately allege a "telephonic
    sales call," he likewise does not adequately allege that Bankroll is a "telephone solicitor"
25  or that he is a "consumer." Fla. Stat. § 501.059(1)(b) (defining "consumer"), (1)(i)
    (defining "telephone solicitor"). However, as those conclusions all flow from the same
26  underlying premise—i.e., that Bankroll was not offering "any consumer goods or services
    [or] soliciting an extension of credit for consumer goods or services" in the first place—
27  they are omitted as standalone arguments to avoid unnecessary duplication.

28

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
Case No. 8:22-cv-01515**

1    **IV.    CONCLUSION**

2        Bankroll's Motion should be granted and Plaintiff's FTSA claims (Counts II and III)

3    should be dismissed with prejudice.

4

5     Dated:  December 22, 2022                    Respectfully submitted,

6
                                                   *s/ Natalie M. Cuadros*
7                                                  Natalie M. Cuadros (CA 326368)
                                                   David M. Krueger (Pro Hac Vice
8                                                  Pending)
                                                   Benesch, Friedlander, Coplan &
9                                                    Aronoff LLP

10
11                                                 *Attorneys for Defendant*
                                                   *Bankroll Capital. Inc.*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT BANKROLL CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO PARTIALLY DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
Case No. 8:22-cv-01515**